IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ROBERT L. HOWSE )
)
v. ) NO. 3:18-01148
)
METROPOLITAN GOVERNMENT OF )
NASHVILLE & DAVIDSON COUNTY, )
TENNESSEE )

**TO: Honorable Waverly D. Crenshaw, Jr. Chief District Judge**

# R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered November 8, 2018 (Docket Entry No. 6), this *pro se* case was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72 of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Presently pending is the motion for summary judgment of Defendant Metropolitan Government of Nashville and Davidson County (Docket Entry No. 56). Plaintiff has responded in opposition to the motion. *See* Docket Entry Nos. 62-67. For the reasons set out below, the Court recommends that the motion be granted.

## I.  PROCEDURAL BACKGROUND

Robert L. Howse ("Plaintiff") is a resident of Nashville, Tennessee. He was formerly employed by the Metropolitan Government of Nashville and Davidson County ("Metro"), working for the Metropolitan Police Department of Nashville ("the Police Department") from July 2005 to September 2017. On October 19, 2018, he filed this *pro se* lawsuit against Metro, the Police Department, the Metro Water Services Department ("the Water Department"), and seven employees of the Police Department. *See* Complaint (Docket Entry No. 1) at 1-3. Plaintiff, who is African-American, alleges that he was subjected to various forms of employment discrimination at the Police Department because of his race,

sex, and disability, and that he was also retaliated against because he complained about the alleged discrimination and retaliation. *Id*. He seeks damages and injunctive relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*., the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*., and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*. *Id*. at 4. Plaintiff requests a trial by jury.

After early motions to dismiss were filed by several Defendants, the Court dismissed all Defendants except for Defendant Metro and dismissed Plaintiff's RICO claim. *See* Memorandum Opinion and Order entered April 29, 2019 (Docket Entry No. 33) at 7. The Court also struck an amended complaint filed by Plaintiff. *Id*. Pursuant to scheduling orders, pretrial activity occurred in the case. It appeared in the summer and fall of 2019 that Plaintiff might obtain counsel and the case was stayed during this period, but an appearance by counsel was never entered on behalf of Plaintiff and the stay was lifted.[1] There are no pending motions other than the motion for summary judgment.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff's *pro se* complaint consists of a form complaint and attachments. Plaintiff's supporting factual allegations are set out in a narrative summary that is attached to the form complaint. *Id*. at 17-19. Included as part of his complaint are four charges of discrimination that he filed with the Tennessee Human Rights Commission, respectively, on May 12, 2017 ("May 12 Charge"), October 23, 2017 ("October 23 Charge"), August 19, 2018 ("August 19 Charge"), and September 11, 2018 ("September 11 Charge'), and right-to-sue letters from the Equal Employment Opportunity Commission ("EEOC") for each of his charges of discrimination. *See* Complaint at 8-16. Also attached to the complaint are what

---

[1] *See* Orders entered June 18, 2019 (Docket Entry No. 36), August 8, 2019 (Docket Entry No. 39), and October 30, 2019 (Docket Entry No. 44),

appear to be a summary that he wrote about his May 12 Charge, *id*. at 20-21, and a copy of a internal "formal complaint" that he filed with "O.P.A." on May 22, 2017. *Id*. at 21-23.

Given a liberal reading of the complaint and attachments, Plaintiff's lawsuit is based upon events that began at the Police Department in 2016 when he worked as a Police Operations Coordinator 1. He alleges that after not being selected for Police Department positions for which he applied, he complained that white females were being treated more favorably by being selected for the positions and by being given better assignments. He asserts that he continued to apply for numerous positions, but that white females, many of whom he alleges were unqualified, were selected to fill these positions. He lists 10 specific positions for which he was not selected but asserts that he applied for 70 positions and made 180 transfer requests without success and that he was kept in "low level divisions such as Records." *Id*. at 18.

Plaintiff alleges that he began to have work related problems after making his complaint and after he "showed some potential signs of success in [the] discrimination case." *Id*. at 17. He also alleges that he was retaliated against after he complained about what he thought was a racially discriminatory management structure and unequal compensation and after filing the May 12 Charge. Plaintiff asserts that the retaliation took the form of a "trumped up 37-day suspension," and his termination from employment. *Id*. at 17. He alleges that he was subjected to a toxic work environment and to harassing and intimidating behavior by Police Department staff such as witness intimidation, stalking, invasion of privacy, withholding information, falsifying records, pervasive conduct, and negligence. *Id*. Additionally, in his May 12 Charge, Plaintiff states that he received disciplinary write-ups despite never receiving them prior to his complaint, *id*. at 9, and, in his October 23 Charge, Plaintiff states that he was moved between departments and received an adverse employment evaluation. *Id*. at 12.

3

Plaintiff contends that Defendant's wrongful actions continued into 2018 after he was no longer employed with the Police Department. He asserts that he was offered a position at the Water Department and was given a start date but that the job offer was rescinded before he could begin working. Plaintiff maintains that the job offer was rescinded because the Police Department gave him a negative employment reference and because of the form of his "discharge categorization." *Id.* at 14 and 16. He further contends that he has been impeded in his ability to obtain an attorney or represent himself because the Police Department has marked files as confidential and refuses to release the records to him.

Finally, Plaintiff asserts that he was discriminated against when he requested a reasonable accommodation for a "dysfunctional breathing/lung system." *Id*. at 5. Although his Complaint contains virtually no factual allegations about this claim, Plaitniff asserts in his May 12 Charge that he requested a reasonable accommodation in February 2017 but that it was not implemented despite being recommended by his physician and the ADA Coordinator. *Id*. at 9. Plaintiff also contends that his request for an accommodation was a reason for the alleged retaliation that he experienced. *Id*. at 9 and 12.

### III. MOTION FOR SUMMARY JUDGMENT

Defendant acknowledges that Plaintiff was not selected to fill positions within the Police Department but contends that either he did not actually apply or withdrew his applications for several of the positions or he was not selected because he was not as qualified as the selected individuals. Defendant further acknowledges that Plaintiff was subjected to three disciplinary suspensions from work during 2017 and was ultimately terminated from employment but contends that the undisputed facts show that the adverse employment actions were taken for legitimate, non-discriminatory reasons. Defendant acknowledges that Plaintiff did make a request to be moved from the Records Division due

4

to a health condition and was temporarily moved but was moved back to the Records Division when he failed to provide the Police Department with any evidence that he required a disability accommodation. Finally, Defendant acknowledges that Plaintiff filed numerous complaints and grievances about issues in his workplace but asserts that those matters were heard and resolved in accordance with department policy and denies that Plaintiff was retaliated against because of his complaints and grievances or because of his charges of discrimination.

Defendant raises two main arguments as to why it should be granted summary judgment under Rule 56 of the Federal Rules of Civil Procedure. First, Defendant argues that some of Plaintiff's Title VII claims cannot be reviewed by this Court because (1) the *res judicata* doctrine precludes review of those claims that were heard and decided against Plaintiff in proceedings before the Metropolitan Civil Service Commission ("Commission") and (2) any claims that are based upon events occurring more than 300 days before the May 12 Charge were not timely raised in an administrative charge of discrimination and are therefore time barred. Second, Defendant contends that Plaintiff's claims fail on their merits because Plaintiff has not set forth evidence upon which any reasonable conclusion could be reached that he was the victim of unlawful discrimination or retaliation. Defendant supports its motion with a memorandum of law (Docket Entry No. 58), a statement of undisputed material facts ("SUMF") (Docket Entry No. 58), excerpts from Plaintiff's deposition transcript (Docket Entry No. 58-1), and the declarations and exhibits attached thereto of Suzanne Bibb ("Bibb") (Docket Entry No. 59) and Damian Huggins ("Huggins") (Docket Entry No. 60). Bibb is the MNPD Human Resources Director and Huggins is the Deputy Chief over the MNPD Administrative Services Bureau.

Plaintiff's response consists of: (1) a "Response and Rebuttal" to the SUMF (Docket Entry No. 62); (2) his own unsworn declaration (Docket Entry Nos. 63 and 67); (3) a list of 22 positions for which he was not selected between November 2015 and August 2017

5

(Docket Entry No. 64); and, (4) an undated and unsigned document entitled "Record's Request for Restructure" (Docket Entry No. 65), which appears to be a copy of a document that he submitted to his supervisors at the Police Department with suggestions about how to restructure the Records Division. In his "Response and Rebuttal" and declaration, Plaintiff disputes many of the statements of undisputed facts made by Defendant and offers his own factual assertions in support of his claims. In his response, Plaintiff does not address any of the legal arguments for dismissal made in Defendant's motion, but he asserts that:

> I think I have established that my case needs to proceed to a jury. Metro Legal are merely using public record and generic information in an attempt to defend MNPD. I think I have presented enough information to at least question discriminatory, hiring, and terminating practices.

*See* Plaintiff's Declaration (Docket Entry No. 63) at 6, ¶ 25.

Also before the Court is Defendant's reply (Docket Entry No. 68) to Plaintiff's collective response. Defendant contends that: (1) Plaintiff's response to the motion for summary judgment fails to comply with the requirements of Federal Rule 56 and Local Rule 56.01 because Plaintiff fails to cite to any evidence in the record in support of his factual assertions; (2) Plaintiff fails to respond to Defendant's specific legal arguments for dismissal of his claims; and, (3) the proof set forth by Plaintiff in support of his claim is largely unresponsive and fails to create genuine questions of material fact.

## IV. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Pennington v. State Farm Mut. Automobile Ins. Co.,* 553 F.3d 447, 450 (6th Cir. 2009). The moving party has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine

6

dispute over material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Rodgers*, *supra*. Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations but must present evidence supporting its claims or defenses. *See Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). Plaintiff's *pro se* status does not relieve him of this obligation, which is a threshold requirement for all non-moving parties when summary judgment is sought by an opposing party. *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986); *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court should not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson*, 477 U.S. at 249.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient to survive a motion for summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595. Further, the Court cannot supply or assume facts supporting a plaintiff's case and is not required to make legal arguments on his behalf. *See Thompson v. A.J. Rose Mfg. Co.*, 208 F.3d 215, 2000 WL 302998 (6th Cir. 2000); *Bell v. Tennessee*, 2012 WL 996560, *9 (E.D. Tenn. March 22, 2012). *See also Guarino v.*

7

*Brookfield Township Trustees*, 980 F.2d 399, 406 (6th Cir. 1992) ("it seems to us utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion.").

## V.  TITLE VII AND THE ADA

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  Title VII also "affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult," and thus prohibits conduct that is "sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65, 67 (1986).  Finally, Title VII's anti-retaliation provision provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

A claim under Title VII must be supported by direct evidence of unlawful conduct or by circumstantial evidence that raises an inference of unlawful conduct.  *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003).  Direct evidence is evidence, which if believed, requires no inferences to conclude that unlawful conduct was a motivating factor

8

in the challenged action. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).[2] If the plaintiff relies upon circumstantial evidence, the Court utilizes the burden shifting paradigm established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff is first required to establish a *prima facie* case of unlawful conduct and, if he does so, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged conduct. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). If the defendant articulates such a reason, the presumption drops from the case, and the plaintiff must then show that the reason offered by the defendant is a pretext for unlawful conduct. *Id*. at 508. Whatever method of proof is used, the ultimate burden is on the plaintiff to show unlawful conduct under Title VII. *St. Mary's Honor Ctr.*, 509 U.S. at 518.

Title I of the ADA prohibits covered employers from discriminating against a "qualified individual on the basis of disability" with regard to hiring, advancement, training, termination, and "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Discrimination" includes a refusal to make "reasonable accommodations" for the employee's disability. *Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (citing 42 U.S.C. § 12112(b)(5)(A)); *see also Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997). To advance a failure to accommodate claim under the ADA, an employee must show that he requested a reasonable accommodation and that the employer failed to provide the necessary accommodation. *Myers v. Cuyahoga Cnty*, 182 Fed.App'x. 510, 515 (6th Cir. 2006). The ADA plaintiff bears the burden of presenting evidence that he requested an accommodation that is reasonable. *Kleiber*, 485 F.3d at 870; *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996) ("the disabled individual

---

[2] For example, an actual statement by an employer "proclaiming his or her ... animus" constitutes direct evidence of discrimination. *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir.1998) (*quoting Robinson v. Runyon*, 149 F.3d 507, 512–14 (6th Cir.1998)).

9

bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.").

## V. ANALYSIS

Defendant's motion for summary judgment should be granted because Plaintiff's case suffers from fatal infirmities. As an initial matter, Plaintiff has not adequately responded to the motion. Although Plaintiff did file a response and rebuttal to Defendant's SUMF, his response does not include citations to the record in support of any of his assertions that facts are disputed, as is required by Federal Rule 56(c)(1) and Local Rule 56.01(c)(3). Additionally, the proof that Plaintiff has offered in support of his allegations and claims consists of only his own declaration and the statements that he includes in his response to Defendant's SUMF. Plaintiff's declaration and statements, however, are either not sworn to under oath or affirmation or not submitted under the penalty of perjury in the form of a properly verified declaration. Unsworn statements of the type provided by Plaintiff cannot be considered as evidence rebutting a motion for summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970); *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991).

Nonetheless, in light of Plaintiff's *pro se* status, the Court has given Plaintiff a great measure of leeway in the consideration of his response to the motion for summary judgment and has engaged in a full review of the merits of his claims. In the end, however, there is simply a lack of evidence before the Court upon which a reasonable jury could find in favor of Plaintiff on his claims. Any issues of fact that exist do not rise to the level of genuine issues of material fact that must be resolved at trial.

10

A. Timeliness and *Res Judicata* Defenses

Defendant's timeliness defense precludes the Court from addressing the merits of some of Plaintiff's claims. The timely filing of an administrative charge of discrimination is a prerequisite to bringing a lawsuit under Title VII. *See* 42 U.S.C. § 2000e-5(e); *Puckett v. Tennessee Eastman Company*, 889 F.2d 1481, 1486-88 (6th Cir. 1989). In the instant case, Plaintiff was required to file a charge of discrimination within 300 days of the alleged unlawful employment practices about which he now complains. *See* 42 U.S.C. § 2000e-5(e); *Amani v. Oberlin College*, 259 F.3d 493, 498-99 (6th Cir. 2001).[3] The failure to timely exhaust administrative remedies is an appropriate basis for the dismissal of a Title VII claim. *Williams v. Northwest Airlines, Inc.*, 53 Fed.App'x 350, 351 (6th Cir. 2002). Thus, Plaintiff's claims based upon events occurring more than 300 days prior to the May 12, 2017, charge of discrimination, i.e. events occurring prior to July 16, 2016, are presumptively viewed as being barred as untimely.

Plaintiff's non-selection for two of the positions listed in Plaintiff's complaint, "ASO3 Media relations" and "Fiscal," *see* Complaint at 16-17, occurred in 2015, well beyond the 300 day time period.[4] Accordingly, claims based upon Plaintiff's non-selection for these two positions are barred as untimely. Furthermore, to the extent that Plaintiff, as part of his response to the motion for summary judgment, provides a list of 22 positions for which he contends he was not selected, his non-selection for at least 5, and possibly 7, of these positions likewise appears to have occurred outside the applicable 300 day time period.[5]

---

[3] Because Tennessee is a "deferral state" for the purposes of federal discrimination statutes, Plaintiff is permitted 300 days within which to file a charge of discrimination. *See Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 375-76 (6th Cir.2002).

[4] In an undisputed statement of material fact, Defendant identifies these two positions, which were filled in 2015, as Administrative Services Officer 3, Police Public Affairs and Fiscal Division. *See* Response to SUMF at ¶ 6.

[5] These positions are: (1) IS Applications Technician I - Police Recruitment; (2) Administrative Assistant - Command Support; (3) Equipment & Supply Clerk 3 - Police; (4) Police Operations Coordinator 2 - Recruitment; (5) Administrative Assistant - SID; (6) Human

11

Likewise, any other claims based upon alleged unlawful workplace events that occurred prior to July 16, 2016, occurred outside the 300-day window and are barred as untimely. Plaintiff has not set forth any argument rebutting the timeliness defense, and Defendant is entitled to summary judgment as a matter of law on those claims.

Defendant also raises the defense of *res judicata* based on the proceedings in which Plaintiff was involved before the Civil Service Commission. Generally, *res judicata* precludes the judicial review of issues and claims that have previously been litigated. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006); *Gutierrez v. Lynch*, 826 F.2d 1534, 1537 n.1 (6th Cir. 1987). Defendant correctly asserts that this Court has applied the preclusive effect of *res judicata* to bar review of retaliation and due process claims that were brought by a Police Department officer who had been dismissed from his job. *Venable v. Metro. Gov't of Nashville*, 430 F.Supp.3d 350 (M.D.Tenn. 2019). In *Venable*, the officer unsuccessfully challenged his job dismissal in proceedings before the Civil Service Commission. The Court found that the officer's claims were barred by *res judicata* because the same issues in the officer's civil lawsuit were raised, litigated, and decided in the proceedings before the Civil Service Commission, whose decision became final when the officer did not pursue an appeal in the state courts as permitted by state law. *Id.* at 357-58.

It is undisputed that Plaintiff, with the representation of counsel, brought matters before the Civil Service Commission on three occasions during the relevant time period and did not appeal any of the decisions in the state courts. In the first proceeding ("No. 43.02-134499J"), Plaintiff raised claims of race and sex discrimination and a claim of a hostile workplace, all of which were based upon events occurring in 2015. *See* Exhibit 4 to Huggins Declaration (Docket Entry No. 60-4). An initial order finding that the claims

---

Resources Analyst I - Police; and (7) Administrative Police HR. *See* Docket Entry No. 64 at 4-5.

12

lacked merit was entered by an administrate judge on November 18, 2016, and a final order upholding the initial order was entered March 22, 2017. *Id.*

In the second proceeding ("No. 43.02-143584J"), Plaintiff challenged his 9-day suspension and his 6-day suspension, as well as the denial of an internal appeal on workplace issues that he had filed. *See* Exhibit 9 to Huggins Declaration (Docket Entry No. 60-9) at 18-34. An initial order upholding the 9-day suspension, upholding but modifying the 6-day suspension to 4 days, and finding that Plaintiff's grievance appeal lacked merit was entered by an administrate judge on March 15, 2018, and a final order upholding the initial order was entered August 14, 2018. *Id.*

In the third proceeding ("No. 43.02-147716J"), Plaintiff raised a challenge to his third suspension and his termination from employment. *See* Exhibit 11 to Huggins Declaration (Docket Entry No. 60-11). An initial order upholding the suspension and termination was entered by an administrate judge on July 5, 2018, and a final order upholding the initial order was entered November 19, 2018. *Id.*

Based upon these proceedings, Defendant contends that *res judicata* bars review of: (1) Plaintiff's claims that his disciplinary suspensions and his termination from employment were acts of racial and/or sex discrimination and were retaliation against him for engaging in protected activity and for requesting a disability accommodation, (2) Plaintiff's claims that he suffered other forms of hostile workplace harassment as retaliation for engaging in protected activity and requesting a disability accommodation; and, (3) Plaintiff's claims of discrimination related to his non-selection for two positions in 2015. *See* Defendant's Memorandum at 6-9. The Court has reviewed the decisions from the Civil Service Commission and finds that they do not have the extensive preclusive effect argued by Defendant. Significant to the decision in *Venable* was the fact that the Commission made specific and pointed findings and conclusions of law with respect to the retaliation and due process claims raised by the plaintiff in that case. *Venable*, 430 F.Supp.3d at 357-58. In

13

Plaintiff's case, such findings and conclusions of law exist in a much more limited extent and only as to Plaintiff's claim that his first two disciplinary suspensions were acts of racial and sex discrimination.

Any preclusive effect of the first proceeding is largely irrelevant because the proceeding was directed at events occurring in 2015. These events were not timely raised in a charge of discrimination, and thus any claims based upon these events are subject to dismissal as untimely for the reasons discussed above.

Although the second proceeding before the Civil Service Commission involved review of Plaintiff's two disciplinary suspensions and of two issues regarding his grievance appeal, the administrative judge made findings about racial and sex discrimination only with respect to Plaintiff's claim that he was subjected to two unequal disciplinary suspensions because of his race and sex. The administrative judge found that (1) Plaintiff "did not present any evidence to show that similarly situated employees were treated differently" and "did not prove that any other employees who were late to work were not disciplined and/or counseled" and (2) Plaintiff "failed to present any evidence that the [Police Department] engaged in discrimination against him. *See* Docket Entry No. 60-9 at 29-30, ¶¶ 52-53 and 61. The administrative judge made no findings or conclusions regarding retaliation against Plaintiff related to his disciplinary suspensions, general retaliation, or discrimination or harassment related to other workplace conduct.[6] Thus, the only claim barred by *res judicata* as a result of the second proceeding is Plaintiff's aforementioned claim that his two disciplinary suspensions were acts of racial and sex discrimination.

---

[6] The administrative judge's only mention of retaliation in the initial decision was to note that one of the two issues presented by Plaintiff's grievance appeal was "whether [Plaintiff] had proven, by a preponderance of the evidence that he was discriminated or retaliated against when he was not granted a postponement of his disciplinary hearing." *See* Docket Entry No. 60-9 at 29, ¶ 52. However, Plaintiff does not raise a claim in this lawsuit based upon Defendant's failure to grant a postponement of his disciplinary hearing.

14

The third proceeding before the Civil Service Commission involved review of the propriety of Plaintiff's third disciplinary suspension and his consequent termination, but the administrative judge noted that the only issues for consideration were whether there was sufficient evidence that Plaintiff engaged in conduct that violated the policies and rules of the Police Department and Metro and whether the sanctions imposed were appropriate. *See* Docket Entry No. 60-11 at 9, ¶ 3. The administrative judge did not consider or make findings and conclusions on issues of retaliation or discrimination. The decision in the third proceeding simply fails to trigger any *res judicata* preclusion as to any of Plaintiff's claims.

B. Failure to Hire Claim

Summary judgment should be granted to Defendant on this claim because Plaintiff fails to set forth supporting evidence that raises genuine issues of material fact that require that the claim be resolved by a jury. No reasonable jury could find in favor of Plaintiff based upon the evidence that is before the Court.

Plaintiff offers no direct evidence showing that he was wrongfully denied a position because of his race and/or sex. Thus, he must rely on circumstantial evidence via the burden shifting analysis. To establish a *prima facie* case of discrimination for failure to hire under Title VII, a plaintiff must establish that he: (1) is a member of a protected class; (2) applied for, and did not receive a job; (3) was qualified for the job; and, (4) that another individual with similar qualification who is not a member of the plaintiff's protected class received the job. *Seay v. TVA*, 339 F.3d 454, 463 (6th Cir. 2003); *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996).

The fatal shortcoming of this claim is that Plaintiff has not provided the type of specific evidence that he needs to rebut the motion for summary judgment and to show that this claim must be resolved at trial. Plaintiff's allegations that he unsuccessfully

applied for "70 positions" and applied for "several" positions, *see* Plaintiff's Declaration at ¶ 18; Response to SUMF ¶ 28, are simply too vague and unspecific to support his failure to hire claim. Similarly, Plaintiff's allegations that he was denied "(180) transfer request[s]," *see* Complaint at 18, and "put in for several transfers over the years," *see* Plaintiff's Declaration at ¶ 23, are the type of general and vague allegation that are not sufficient to support his claim. At this stage of the proceedings, when the parties have been provided with the opportunity for discovery and when Plaintiff's claims have been challenged by a motion for summary judgment, Plaintiff must support his failure to hire claim with evidence of specific positions, promotions, or transfers that he was denied. General allegations are not sufficient.[7]

In response to the summary judgment motion, Plaintiff provides a list of 22 positions for which he applied but was not selected between November 6, 2015, and August 2, 2017. *See* Docket Entry No. 64. However, this list is likewise lacking in terms of adequate supporting evidence. Even if the Court takes as true that Plaintiff applied for these positions and that his applications were rejected, being rejected for a position, in and of itself, is not circumstantial evidence of discrimination. Plaintiff must also satisfy the other elements of a *prima facie* case for each of these positions by setting forth evidence, not just unsupported assertions, that he was qualified for each position and evidence concerning a specific individual who was similarly situated and outside his protected status who was selected to fill the position. It is Plaintiff's burden to satisfy his *prima facie* case, *Burdine*, 450 U.S. at 252-53, which he has not met with respect to this list of positions.

---

[7] The Court further notes that Plaintiff admits that he voluntarily withdrew a request for a specific job transfer and acknowledges that he does not have evidence of any other specific job transfer requests that were denied. *See* Response to SUMF ¶¶ 39-40.

16

In his complaint, Plaintiff lists ten positions for which he contends he was qualified and for which white females were selected. *See* Complaint at 18.[8] Nevertheless, he provides very little specific information about these positions or the selected individuals. Plaintiff's own subjective assertion that "he was qualified" is not sufficient evidence showing that he was actually qualified for any of these positions. *See Alexander v. CareSource*, 576 F.3d 551, 559 (6th Cir. 2009) (plaintiff's statement that "she believes she is qualified for the position" was not evidence that she was qualified for the position at issue). Nor is the mere assertion that the selected individuals "didn't meet minimum criteria" sufficient. Although the burden on a plaintiff at the *prima facie* stage is not onerous, neither are generalized and vague allegations sufficient to support a *prima facie* case. *Stewart v. Esper*, 815 Fed.App'x 8, 17 (6th Cir. 2020); *Frazier v. USF Holland, Inc.*, 250 Fed.App'x 142, 147 (6th Cir. 2007). Further, merely stating that generic "white females" were selected for the positions is not adequate to satisfy the fourth prong of his *prima facie* case. *See White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 241 (6th Cir. 2005) ("it is insufficient for a plaintiff in a failure to promote sex discrimination case merely to point to a man who received the job in satisfying the fourth prong."). Plaintiff must provide particular evidence of the specific individual who was outside the protected class and was selected for each position and evidence of that individual's qualifications. *Id; Crum v. Tyson Fresh Meats*, 390 F.Supp.2d 658, 665 (M.D.Tenn. 2005). Plaintiff is not entitled to a trial on this claim merely on the basis of the general allegations. *See Banks*, 330 F.3d at 892; *Goins*, 926 F.2d at 561. He must do more at this stage of the proceedings.

In its summary judgment motion, Defendant identifies eight positions in the Police Department that it questioned Plaintiff about during his deposition and that were positions for which he was not selected but for which white applicants were selected. *See* Response

---

[8] As set out *supra* at § V.A, Plaintiff's failure to be selected for two of the positions, "ASO3 Media relations" and "Fiscal," are events that were not timely raised in a charge of discrimination.

to SUMF at ¶ 28. After reviewing Defendant's evidence regarding these positions and Plaintiff's response, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claim as to each of these positions.

For two of the positions, Administrative Services Officer 3, Records Administration (Recruitment #17249D) and Crime Lab Evidence Receiving Technician (Recruitment #17121D), Plaintiff does not dispute that he either did not apply for the position or withdrew his application. *Id*. at ¶¶ 34 and 37. Accordingly, he cannot satisfy his *prima facie* case for these two positions.

For three of the positions, Police Operations Coordinator 2, Special Investigations Division (Recruitment #17154E), Police Operations Coordinator 2, Training (Recruitment #17201D), and Police Operations Coordinator 1, Traffic (Recruitment #17074D), Plaintiff has not met his *prima facie* case because his evidence about the individuals who were selected is minimal at best. For the first and second positions, he merely declares that a "white female that didn't meet requirements was selected" *id*. at ¶ 31, and that a "white female was selected for the position." *Id*. at ¶ 35. For the reasons already stated, this type of vague and general assertion is not sufficient to satisfy the *prima facie* case. *See also McKibbens* v. Metro. Gov't of Nashville & Davidson Cty., 2018 WL 6696990 at *6 (M.D.Tenn. Dec. 20, 2018) (Richardson, J.) ("Simply arguing that these comparators were less qualified does not meet Plaintiff's burden at the summary judgment stage."). For the third position, Plaintiff does not even identify the individual selected for the position. *See* Response to SUMF at ¶ 32.

Although Plaintiff's responses raise a factual dispute about Defendant's contention that (1) he was not interviewed for the Police Operations Coordinator 2, Special Investigations Division (Recruitment #17154E) position and (2) he withdrew his application for the Police Operations Coordinator 1, Traffic (Recruitment #17074D) position, these disputes fail to amount to genuine issues of material fact that must be resolved at trial.

18

Even if the Court takes as true Plaintiff's declaration on these disputes, his lack of specific evidence satisfying the other elements of his *prima facie* case as to these positions warrants the dismissal of his claim.

For the position identified as Human Resources Analyst (Recruitment #17018E), a dispute exists as to whether Plaintiff applied for this specific position. Although Defendant contends that Plaintiff did not apply, Plaintiff contends that he applied for "Human Resources Analyst" at least twice and for another "HR" position. *Id*. at ¶ 38. However, this dispute fails to rise to the level of a genuine issue of material fact because, once again, Plaintiff has simply not set forth clear and specific evidence supporting a claim based upon these positions. Essentially, the Court must guess as to the facts that would satisfy a *prima facie* case as to these positions. As the party asserting the claim, it is Plaintiff's burden to set forth sufficient supporting facts. At this stage of the proceedings, a claim cannot proceed to trial without some level of factual certainty with an evidentiary basis.

As to the remaining two positions, Administrative Services Officer 4, Human Resources/Payroll (Recruitment #17017D) and Crime Lab Evidence Receiving Technician (Recruitment #17035E), Defendant has placed evidence in the record about the specific individuals who Defendant ultimately selected for the position, their qualifications, and a comparison between Plaintiff and each selected individual as the reason for Plaintiff's non-selection. *See* SUMF at ¶¶ 33 and 36. Assuming for the purposes of determining the summary judgment motion that Plaintiff shows a *prima facie* case for these positions, Defendant's evidence satisfies its burden of providing legitimate, non-discriminatory reasons for the hiring decisions and the burden shifts to Plaintiff to show that Defendant's reasons were not the true reasons but were a pretext for racial or sex discrimination.

A plaintiff may establish pretext by showing "'that the employer's proffered explanation is unworthy of credence.'" *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 667 (6th Cir.2000) (*quoting Burdine*, 450 U.S. at 256). Pretext can be established in this way by

showing that: (1) the employer's reason has no basis in fact; (2) the proffered reason did not actually motivate the employer's conduct; or (3) the proffered reason was insufficient to warrant the challenged conduct. *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). In the instant case, Plaintiff does not actually dispute Defendant's evidence, *see* Plaintiff's Response to SUMF at ¶ 33 and 36, but merely takes issue with Defendant's ultimate decisions and Defendant's contention that the selected individuals were the "best" qualified for the positions at issue. *See* Plaintiff's Declaration at ¶¶ 17 and 33. However, Plaintiff's mere disagreement with the ultimate selections made by Defendants for these positions is not enough to show pretext. *See Leonard v. Renewal House, Inc.*, 2012 WL 3579619 at *8 (M.D.Tenn. Aug. 16, 2012) (Sharp, J.) (the plaintiff's belief that she was at least as well-qualified as the selected individual is not sufficient to show pretext).

In the absence of evidence that the selected individuals were not objectively qualified for the positions, Plaintiff must present some type of evidence that would support a reasonable finding that the hiring decision was a pretext for discrimination, such as evidence that Plaintiff was "a plainly superior candidate, such that no reasonable employer would have chosen" the other person over Plaintiff or that Plaintiff "was as qualified as if not better qualified than the successful applicant, and the record contains other probative evidence of discrimination." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011) (citation omitted). Plaintiff has not presented such evidence. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for these positions.

## C.  Adverse Employment Action Claim

Summary judgment should be granted to Defendant on Plaintiff's claim that his disciplinary suspensions and his termination from employment with the Police Department were acts of discrimination against him due to his race or sex. Plaintiff fails to set forth supporting evidence that raises genuine issues of material fact that require that

20

the claim be resolved by a jury.  No reasonable jury could find in favor of Plaintiff on this claim based upon the evidence that is before the Court.

There are four materially adverse employment actions at issue;

1.      On April 7, 2017, Plaintiff was suspended from work without pay for nine days for (1) violating  MNPD Policy 4.20.050 Official Obligations, I. Attendance, which was based on being tardy to work on November 10, 2016, without notifying his supervisor, and (2) violating MNPD Policy 4.20.050 Official Obligations, B. Instructions for Authoritative Source, which was based on his refusal of instructions from his supervisors to sign a remedial counseling report on November 29, 2016, that was related to the late to work event.  *See* MNPD Documents related to Control Number 116116C, Exhibit 7 (Docket Entry No. 60-7) to Huggins Declaration;

2.      On April 12, 2017, Plaintiff was suspended from work without pay for six[9] days for violating MNPD Policy 4.20.050 Official Obligations, B. Instructions for Authoritative Source, which was based upon his act of contacting a person in the payroll department in February 2017 after he had been instructed by his supervisor in December 2016 that he needed to go through his supervisor and obtain permission before he contacted and discussed issues with the payroll department regarding time accounting.  *See* MNPD Documents related to Control Number 022317C, Exhibit 8 (Docket Entry No. 60-8) to Huggins Declaration;

3.      On September 28, 2017, Plaintiff was suspended from work without pay for a total of 22 days for  five violations of MNPD policies and five violations of Metro Civil Service rules, which were based upon events that occurred on

_____

[9]  The suspension was upheld but reduced to four days upon Plaintiff's appeal to the Civil Service Commission.  *See* Docket Entry No. 60-9 at 19-20.

21

February 23, 2017, when Plaintiff is alleged to have twice failed to complete a task as ordered by a supervisor, conducted personal business at a time during his shift when he had been ordered not to, and demonstrated a lack of responsibility toward his job and coworkers by making an outburst toward his supervisor. *See* MNPD Documents related to Control Number 064817D, Exhibit 10 (Docket Entry No. 60-10) to Huggins Declaration at 1-2 and 15-17; and,

4.  On September 28, 2017, Plaintiff was terminated from his employment by operation of the Civil Service Rules and Metro Charter because he had accumulated over thirty suspension days within a 12-month period. *Id*. at 14.

As set out above, *res judicata* applies to Plaintiff's claim that the first two suspensions were acts of racial or sexual discrimination based upon the decision made by the Civil Service Commission on the suspensions, and this Court is thus barred from reviewing this claim. However, even in the absence of *res judicata*, Defendant is entitled to summary judgment on Plaintiff's claim as to all four materially adverse employment actions.

Plaintiff has offered no direct evidence that any of these actions were taken against him because of his race or sex. Accordingly, he must proceed via the *McDonnell Douglass* burden-shifting, evidentiary framework for cases based upon circumstantial evidence, which requires him to first establish a *prima facie* case. Generally, to establish a *prima facie* case of discrimination on the basis of race or sex, the plaintiff must show that: (1) he is a member of the protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the position at issue; and (4) he was treated differently than a similarly situated non-protected employee. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016); *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). Although there is no dispute that Plaintiff satisfies the first three elements of his *prima facie*

22

case, Plaintiff fails to satisfy the fourth element, which requires proof that he was treated differently from similarly situated members of an unprotected class.

To establish that a non-protected employee is an appropriate comparator, Plaintiff must show through evidence that he was "similarly situated in all of the relevant respects to an employee of a different race who was treated better." *Johnson v. Ohio Dep't of Pub. Safety*, 942 F.3d 329, 331 (6th Cir. 2019) (internal citations omitted). The Sixth Circuit has delineated certain factors to consider as part of this determination that include whether the non-minority employees dealt with the same supervisor, whether they were subject to the same standards of employment, and whether they engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992). In the disciplinary context, this requires that Plaintiff and the proposed comparator have engaged in acts of "comparable seriousness." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002).

Plaintiff bears the burden of production at the summary judgment stage to prove by evidence in the record that he is similarly-situated to fellow employees who did not face discipline. *Mitchell*, 964 F.2d at 583 n.5 (6th Cir. 1992). Plaintiff fails to meet this burden with adequate proof on this issue, a failure that is fatal to his claim. He has offered no evidence of any specific individual outside the protected class that was in his department and under the supervision of the same supervisor but who was not disciplined after engaging in the same or similar conduct that formed the basis for the disciplinary actions against Plaintiff. Instead, the entirety of proof on this issue offered by Plaintiff consists of this statement:

> A white officer case was heard before mines (sic). Officer was accused of stealing from a crime scene. It was decided to give him his job back and reduce his suspension. I was assigned to a division with an officer that was involved in a controversial shooting of a black man. Officer had a history of

more egregious infractions. He was still employed after I was terminated. A white officer was having a sexual affair with the Mayor. His daughter was the first metro attorney to prosecute me for 15 day unpaid suspension. He was allowed to retire with pension.

*See* Declaration at ¶ 14. Plaintiff's statement fails to provide sufficient proof for several reasons.

First, as with many of Plaintiff's statements, he fails to provide specific information about the other employees at issue, referring to them in general terms. Such generalities do not suffice at the summary judgment stage. *See Turner v. United Parcel Serv., Inc.*, 2019 WL 5190992 at *4 n.4 (M.D.Tenn. Oct. 15, 2019) (Trauger, J.) (noting that plaintiff's use of unidentified comparator employees would likely be insufficient, as an evidentiary matter, to support a *prima facie* case of discrimination). Second, Plaintiff offers no basis for concluding that he has personal knowledge of much of what is included in his statement, and he offers no other type of other evidence to buttress the assertions of fact made in his statement. Finally, Plaintiff offers no evidence that these three employees were actually similarly situated to him in terms of any factor other than they were employed by the Police Department. Plaintiff's broad and unsupported statement is not enough to rebut the motion for summary judgment.

A plaintiff does not satisfy the fourth prong of the burden shifting analysis simply because he is a member of a protected group and has been subjected to an adverse action. *See Clayton*, 281 F.3d at 611; *Bryant v. Rolling Hills Hosp., LLC*, 836 F.Supp.2d 591, 617 (M.D.Tenn. 2011); *Johnson-Romaker v. Kroger Ltd. P'ship One*, 609 F.Supp.2d 719, 730-31 (N.D.Ohio 2009). When a plaintiff is unable to establish that similarly situated employees were treated differently, summary judgment is proper. *Pertiller v. City of Murfreesboro*, 2020 WL 7055553 at *18 (M.D.Tenn. Dec. 2, 2020) (Trauger, J.) ("Because the plaintiff is unable to show that a material factual dispute exists as to whether he was treated differently from similarly situated non-protected employees or to present some other comparable evidence based on which an inference of racial discrimination might arise, the defendant is entitled

24

to summary judgment in its favor on the Title VII discrimination claim."); *Mahar v. Meharry Med. Coll.*, 2017 WL 6442144 at *10 (M.D.Tenn. Dec. 18, 2017) (defendant entitled to summary judgment on sex discrimination claim when plaintiff was not able to provide evidence of similarly situated comparator); *Cox v. Elec. Data Sys. Corp.*, 751 F.Supp. 680, 692 (E.D. Mich. 1990). Because Plaintiff cannot make out a *prima facie* case, no further analysis is required to grant Defendant summary judgment on this claim.

## D. Retaliation Claim

Summary judgment should be granted to Defendant on Plaintiff's claim that he was retaliated against because he engaged in protected activity. Plaintiff fails to set forth supporting evidence that raises genuine issues of material fact requiring that the claim be resolved by a jury. No reasonable jury could find in favor of Plaintiff on this claim based upon the evidence that is before the Court.

Title VII prohibits employers from retaliating against employees who oppose an unlawful employment practice. 42 U.S.C. § 2000e-3(a). "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Plaintiff offers no direct evidence showing that he was the victim of retaliation. In the absence of such evidence, Plaintiff must proceed via the *McDonnell Douglas* burden shifting framework. To establish a *prima facie* case of retaliation under Title VII using circumstantial evidence, a plaintiff must demonstrate that: (1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an adverse action against the plaintiff; and (4) a causal connection existed between the protected activity and the adverse action. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a non-discriminatory reason for its actions. *Mickey v. Zeidler*

25

*Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008). If the defendant articulates such a legitimate, non-discriminatory reason, the plaintiff, to avoid summary judgment, must present evidence to show that the defendant's stated reason is merely a pretext for retaliation. *Id.* Pretext can generally be established by showing that the defendant's proffered reason was factually false, did not actually motivate the challenged adverse action, or was insufficient to motivate the adverse action. *Tingle v. Arbors at Hillard*, 692 F.3d 523, 530 (6th Cir. 2012). "[A]t bottom the question is always whether the employer made up its stated reason to conceal intentional [retaliation]." *Id.* (*quoting Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009))

Sorting out the specifics of Plaintiff's retaliation claim is no easy task because of the largely narrative nature of his complaint, because his complaint contains very few specifics as to dates of events, and because he appears to allege that every objectionable event, no matter how minor, that occurred in his workplace during the relevant time period was an act of retaliation against him. The Court has therefore looked to the administrative charges of discrimination that were attached to Plaintiff's complaint for clarification of his claims.

In Plaintiff's May 12 Charge, Plaintiff alleges that, after making complaints in August 2016 about what he perceived to be favorable treatment that white females were receiving, he began to experience what he contends were retaliatory actions such as his non-selection to open positions, disciplinary write-ups, and a job suspension. *See* Complaint at 9. In Plaintiff's October 23 Charge, he alleges that he was subjected to various forms of retaliation – being moved between departments, being given an adverse performance evaluation, not being selected for promotions, being disciplined with job suspensions, and being discharged from employment – after filing the May 12 Charge. *Id.* at 12.

26

Even if the Court assumes that Plaintiff can satisfy a *prima facie* case for his retaliation claim,[10] Defendant has met its burden of providing legitimate and non-retaliatory explanations for the challenged disciplinary actions taken against Plaintiff and for Plaintiff's transfer to the MNPD Records Division. *See* Defendant's Memorandum at 12-14. Further, Defendant has fully explained the reasons for Plaintiff's non-selection for other employment positions within the MNPD. *Id.* at 15-19. At this point, Plaintiff must come forth with sufficient evidence on the issue of pretext to create genuine issues of material fact that require resolution of this claim at trial. Plaintiff has not met this burden.

To avoid summary judgment once an employer proffers a legitimate non-retaliatory reason for an adverse employment action, the employee must point to specific evidence that the employer's proffered reason is pretextual and that "the desire to retaliate was the but-for-cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Plaintiff's speculative conclusions that he was being retaliated against because of his protected activity is not enough to defeat the summary judgment motion. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 519 (6th Cir. 2009); *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996). In response to Defendant's evidence, Plaintiff must submit evidence that undermines the legitimacy of Defendant's stated reason for Plaintiff's termination. *See Tingle*, 692 F.3d at 533. Plaintiff has not come close to bringing forth such evidence and has simply not made any argument that is based upon evidence and law that supports a plausible finding of pretext. His contention that Defendant sought to "trump up charges against him and build a paper trail" is not supported by actual evidence and

---

[10] Although Defendant argues that Plaintiff cannot show a causal connection between any of the alleged adverse activity and a protected activity because his charges of discrimination were filed after the alleged adverse activity *see* Memorandum at 22, Plaintiff's September job suspension and his termination clearly occurred after his May 12 Charge. Further, an internal workplace complaint about racial discrimination, which Plaintiff asserts that he made in August 2016 and which predates the alleged adverse activity, can constitute protected activity for the purposes of a retaliation claim. *See Mengelkamp v. Lake Metro. Hous. Auth.*, 549 Fed.App'x 323, 331 (6th Cir. 2013)

his objections to the disciplinary actions that were taken against him are likewise unsupported by actual evidence that can reasonably be viewed as showing that the disciplinary actions were a pretext for retaliation. Plaintiff has further failed to set forth any actual evidence that can reasonably be viewed as showing that the employment hiring decisions made by Defendant were a pretext for retaliation.

E. Hostile Workplace Claim

Encompassed within the protections afforded by Title VII is a protection against employees being subjected to a hostile workplace because of the employee's protected status. *Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001). An unlawful hostile work environment occurs when a plaintiff's workplace is so permeated with discriminatory intimidation, ridicule and insult that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The conduct at issue must be so severe or pervasive that a reasonable person would find the workplace hostile or abusive, and that the victim must subjectively regard the workplace as abusive. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000). The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Additionally, the alleged hostile conduct must be based upon a plaintiff's protected status. *Williams v. CSX Transp. Co.*, 643 F.3d at 502, 511 (6th Cir. 2011). Therefore, only incidents that occurred because of a plaintiff's protected status are properly considered in the context of a claim of hostile work environment. *Id. See Faragher*, 524 U.S. at 788 (finding that "it is important to distinguish between harassment and discriminatory harassment in order to ensure that Title VII does not become a general civility code"); *Vitt v. City of Cincinatti,* 2004 WL 1147256 (6th Cir. May 20, 2004) (although the plaintiff had "an interpersonal conflict" with her "difficult

28

supervisor," and was "physically threatened" and "humiliated," she failed to show racial harassment); *Ferguson v. Paulson*, 2009 WL 2223315 (M.D.Tenn. July 23, 2009) (Trauger, J.) (plaintiff failed to show that workplace criticism and reprimands were linked to her protected status).

Although Plaintiff does not specifically raise a hostile workplace claim in any of his charges of discrimination, and although he does not clearly raise this claim in his complaint, he refers in his complaint to a racially hostile and toxic environment in the Records Division. *See* Complaint at 18 and 20-21. Despite the lack of certainty as to whether this claim has been exhausted and is properly before the Court,[11] the Court has reviewed Plaintiff's allegations and the evidence in the record as if the claim were properly raised. When the totality of the circumstances presented by Plaintiff's case are considered, Plaintiff's allegations, even when taken as true and viewed in the light most favorable to him, are insufficient to support an actionable claim that he was subjected to a racially hostile workplace. While Plaintiff complains about much that occurred in his workplace, he simply fails to offer any evidence of severe or pervasive racially hostile conduct. No reasonable jury could find in his favor on this claim based upon the evidence that is before the Court.

F. Disability Discrimination Claim

Plaintiff's disability discrimination claim is only vaguely set out in his complaint, but in his May 12 Charge, he contends that he requested a reasonable accommodation in February 2017 for a disability and was denied the accommodation even though it had been recommended by his physician and the "ADA Coordinator." *See* Complaint at 9. He

---

[11] *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) (plaintiff's hostile workplace claim was dismissed as unexhausted when it was not alleged in his charge of discrimination and when the complaint's allegations of a hostile workplace exceeded the scope of his charge of discrimination).

further contends that the alleged acts of retaliation that he has attributed to Defendant's desire to retaliate against him for engaging in protected activity also occurred as retaliation for his request for an accommodation. *Id.*

In its motion, Defendant provides factual details underlying this claim. Defendant acknowledges that Plaintiff requested in February 2017 to be moved from the MNPD Records Division due to a health condition. *See* SUMF at ¶ 21. Defendant asserts that Plaintiff was temporarily moved to another division while he was given an opportunity to provide medical documentation related to his health condition. *Id.* Defendant contends that, although Plaintiff provided a physician's note that stated he had asthma and should be "removed from known stressful conditions, if possible," the note did not identify any specific job-related restriction or a particularized need for accommodation, *id.*, and that MNPD Human Resources requested that the Civil Service Medical Examiner ("CSME") examine Plaintiff and provide details of any job-related restrictions. *See* SUMF at ¶ 22. Defendant asserts that because Plaintiff refused to submit to an in-person evaluation by the CSME, the CSME reviewed Plaintiff's medical records and functional job description, determined that he had no restrictions, and concluded that he could perform the duties of his position. *Id.* MNPD thereafter returned Plaintiff back to work in the Records Division in May of 2017. *Id.*

Based on these facts, Defendant argues that Plaintiff's lack of a reasonable accommodation claim fails because Plaintiff never provided MNPD with any evidence to show that he had any medical restrictions requiring an accommodation or that he requested, but was denied, a reasonable accommodation to which he was entitled. Defendant further argues that Plaintiff has not shown that he was qualified to do his job with or without an accommodation. Defendant contends that Plaintiff's disability retaliation claim warrants dismissal for the same lack of evidence reason that this Title VII retaliation warrants dismissal. *See* Defendant's Memorandum at 23-26.

Plaintiff disputes Defendant's statements of undisputed facts as to these events, but the basis for his dispute is somewhat unclear and he does not appear to dispute the underlying basic facts. *See* Plaintiff's Response to SUMF at ¶¶ 21 and 22. Plaintiff contends:

> I was still assigned to Records Division. My ADA claim was impeded by MNPD. Metro doctor still concurred that I suffered from work related anxiety. I was mandated to a fit for duty evaluation by MNPD. HR Director & A.D.A. coordinator Bibb even stated that she thought management was going to allow me to do the job that was more conducive to my health at least until official documents came back from my doctor. Capt. Starling over stepped A.D.A. coordinator and my doctor with his ego. He forced me to do a fit for duty evaluation. The metro doctor stated I suffered from work related anxiety.

*See* Plaintiff's Declaration at ¶ 15.

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show, among other factors, that he is in fact disabled within the meaning of the ADA. *Keith v. Cty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013). Not every physical and mental impairment is considered a disability under the ADA. *See* 29 C.F.R. § 1630.2(j)(1)(ii) ("[N]ot every impairment will constitute a disability within the meaning of [the ADA]. . . ."). Plaintiff has offered no actual evidence that he had a medical condition that rendered him disabled for the purposes of the ADA. Indeed, the only evidence in the record on the issue of Plaintiff's medical condition comes from Defendant. *See* Docket Entry No. 60-6. However, there is no evidence in the record, nor any argument from Plaintiff, that shows that the respiratory problems from which Plaintiff suffers, *id*. at 3, rise to the level of a disabling condition under the ADA.

Furthermore, the undisputed evidence shows that Plaintiff failed to provide Defendant with adequate medical information supporting his claim of a disability and showing specific accommodations that might be necessary and also shows that Plaintiff failed to comply with Defendant's request for a further physical examination on the issue of Plaintiff's asserted disability and need for accommodation. As part of the interactive

31

process required by the ADA, an employer has the ability to verify an employee's stated disability and the need for accommodation. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 813 (6th Cir. 2020); *E.E.O.C. v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1094 (6th Cir. 1998). Plaintiff's failure to provide to Defendant supportive medical documentation regarding his alleged disability and failure to complete the physical examination requested by Defendant is a sufficient basis upon which to grant summary judgment to Defendant on this claim. *See Tchankpa, supra*; *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 656 (6th Cir. 2000). Finally, Plaintiff has offered absolutely no proof that in any way shows or even infers that his requests for a workplace accommodation was linked to any of the adverse actions about which he complains.

## G. Metro Water Services Job Claim

Plaintiff alleges in his complaint that he was offered a position with Metro Water Service in July 2018, and was given "a start date, salary, schedule, pay method, etc." but that the job offer was rescinded "due to [the MNPD] situation." *See* Complaint at 18. In his September 11 Charge, he further asserts that his start date was July 16, 2018, but that the job offer was rescinded on July 5, 2018, and that he believes that the job offer was rescinded because "of the categorization given to [him] when discharged" by MNPD and that the MNPD provided him with a negative employment reference. *Id*. at 16. Plaintiff's September 11 Charge alleges that the job offer rescission was an act of racial discrimination and an act of retaliation because of his prior charges of discrimination. *Id*.

In what can only be viewed as a cursory argument on this claim, Defendant argues that summary judgment is warranted because Plaintiff cannot establish pretext due to his acknowledgment at his deposition that the job offer was rescinded for legitimate, non-discriminatory reasons, namely his termination and disciplinary record at MNPD. *See* Memorandum at 19; SUMF at ¶ 37. However, Defendant reads Plaintiff's actual deposition

testimony much too expansively.[12]  Furthermore, Defendant provides no actual evidence of what decision was actually made regarding the Water Services job or the stated reason the job offer was rescinded.  In contrast to Defendant's specific evidence on the decision-making process with respect to the positions within MNPD that are at issue in this case, Defendant's motion as to the Water Services job claim is not supported by any similar evidence.

Nevertheless, Plaintiff's supporting evidence falls far short of satisfying his *prima facie* burdens with respect to his racial and retaliation claims related to this job.  As to his claim of racial discrimination, Plaintiff offers absolutely no evidence that a person outside the protected class was selected for the position or any other evidence that is an indicia of racially discriminatory treatment with respect to the selection of a person for this job, as is required for his *prima facie* case.  With respect to Plaintiff's assertion of retaliation, he likewise fails to offer any evidence that shows a causal connection between his May 12 Charge and October 23 Charge, the protected activity for which he alleges he was retaliated, and the rescission of the job offer.  Nearly a year passed between the latest of these two charges and the rescission of the Water Services job offer.  Such a lengthy time span undermines any inference of retaliation.  Further, Plaintiff has offered no other evidence that indicates in any manner that his filing of charges of discrimination were a factor in the decision process for the Water Services job.  Plaintiff likewise offers no

---

[12] The deposition testimony from Plaintiff that Defendant relies on is as follows:

Q.  So If I understand you correctly you're saying that the reason not to hire you with Metro Water was solely because of the proceedings that were going on related to MNPD?

A.  Uh-huh.

Q. An I'll just remind you to say yes or no if you can.

Q. Yes.

*See* Docket Entry No. 58-1 at 7.

evidence supporting his allegation that MNPD provided him with a bad reference. Indeed, Plaintiff offers no actual evidence at all, other than his own allegation, about the particulars of the Water Services job or why the job offer was rescinded. It is Plaintiff's burden to support this claim with sufficient facts upon which a reasonable jury could find in his favor and he has simply not met this burden.

## R E C O M M E N D A T I O N

For the reasons set out above, it is respectfully RECOMMENDED that the motion for summary judgment of Defendant Metropolitan Government of Nashville and Davidson County (Docket Entry No. 56) be GRANTED and that this case be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.03(b)(1). A failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any other party wishing to respond to the objections shall file a response within fourteen (14) days after being served with a copy of such objections. *See* Federal Rule 72(b)(2) and Local Rule 72.03(b)(2).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

34